compensation, Id. Equity interferes by injunction in order to prevent irreparable mischief, or to suppress a multiplicity of suits and vexatious litigations. Id.

An action to procure the cancellation of a written instrument cannot be maintained, unless some special circumstance exists establishing the necessity of a resort to equity, to prevent an injury, which might be irreparable and which equity alone is competent to avert. Globe Mut. L. Ins. Co. *v.* Reals, 79 N. Y. 202, Town of Venice *v.* Woodruff, 62. N. Y. 462. The mere fact that a defense exists to the instrument is insufficient. Id. Nor is it sufficient that evidence, to establish the defense, may be lost by delay. Id.

An equitable action cannot be maintained to have a written instrument, purporting to be an obligation for the payment of money, surrendered and cancelled, where the instrument is void, even in the hands of a *bona fide* holder, and where the burden of proving its validity rests upon the holder, if he seeks to enforce payment. Town of Venice *v.* Woodruff, 62 N. Y. 462.

In the absence of special circumstances calling for the interposition of the court of equity, an action cannot be maintained to compel the surrender of a promissory note past due upon the ground that it has been paid but not taken up. Fowler *v.* Palmer, 62 N. Y. 533.

The mere fact that a party has made an agreement or given a security which is void for usury, is not sufficient to entitle him to apply to a court of equity to have the contract annulled. Allerton *v.* Belden, 49 N. Y. 373. The right to this relief exists only when, from the form of the security, the defense cannot be made available at law, or where the instrument sought to be avoided is a cloud upon the title of the land, or some other necessity for the intervention of the court of equity is shown. Id.

---

THE PEOPLE OF THE STATE OF NEW YORK, *ex rel.*, MARGARET Day, Respondent, *v.* MOUNT MAGDALEN SCHOOL OF INDUSTRY, Appellant.

*Supreme Court, Third Department, General Term, December 11, 1889.*

1. *Criminal law. Disorderly person.*—A magistrate has no jurisdiction, under section 291 of the Penal Code, to commit for being a disorderly child.

2. *Same.*—Such defect cannot be cured by a new commitment for a different offense, issued nearly two years afterward, without an appearance, new examination, legal evidence, or even personal knowledge.

3. *Same.*—The purpose of the provision, in section 291 of the Penal Code, for a new commitment is to permit the original committing magistrate to cure thereby defects in the original commitment.

Appeal from order discharging Mary Day on the hearing of a writ of *habeas corpus.*

The opinion at special term was as follows :

EDWARDS, J.—The arrest and commitment of Mary Day were made under § 291 of the Penal Code.   That section enumerates various acts and conditions of children under sixteen years of age for which they may be arrested and brought before a proper court or magistrate, by whom they may be committed to any incorporated charitable reformatory or other institution.   There is no question that the defendant is a proper institution to receive and care for this child if she was properly committed.   The question is as to the validity of the warrant of commitment by virtue of which she is detained.

This warrant was made by M. H. Myers, assistant police magistrate of Troy, and is dated October 24, 1887.   It recites that Mary Day was brought before him, charged " with being a disorderly child," and that she had been " duly arraigned and tried upon such charge."   The statute nowhere provides that one may be arrested, convicted and committed to such an institution on the charge of " being a disorderly child."   Prior to 1886 this section provided that a child coming within any of the descriptions or doing any of the acts therein mentioned, might be arrested " as a vagrant, disorderly or destitute child."   The amendment of 1886 omitted the words in quotation.   The magistrate has no jurisdiction to commit, except for one of the several causes enumerated in the section.   Being a disorderly child is not one of these.   I think, therefore, that the commitment was illegal.   This is one of the grounds on which the relator, who is the mother of the child, asks for her discharge.

The counsel of the defendant, evidently appreciating the fact that this warrant of commitment is defective, seeks to have the child detained by virtue of another warrant of commitment, made by another magistrate, after the writ of *habeas corpus* herein was allowed and served.   This last warrant is dated July 29, 1889, and is made by William Donohoe, police magistrate of Troy.   It recites that Mary Day had

been brought before him, which, however, is conceded by defendant's counsel, on the argument, to be an error, recites a conviction by Michael H. Myers on October 24, 1887, and that the commitment by Myers " is defective, in that it describes the said Mary Day with being charged with being a disorderly child." It then orders and adjudges " that a new commitment be made, and that the said Mary Day be convicted of frequenting houses of prostitution, and being in concert saloons, dance houses," and of various other acts, all of which are enumerated in § 291 of the Penal Code as causes for which a child under sixteen years may be committed. Doubtless this was done under the provision of § 291, which says: " Whenever any commitment of a child shall for a reason, be adjudged or found defective, a new commitment of the child may be made or directed by the court or magistrate, as the welfare of the child may require." The purpose is to permit the committing magistrate to make a new commitment where the child has been regularly arrested, brought before him, convicted of some act mentioned in the section, and the commitment made by him thereupon is found to be defective.

In this case we have another magistrate, nearly two years after the conviction, after a writ of *habeas corpus* has been served, finding that the commitment is defective, making out a new commitment for a different offense, and this without having the child brought before him, without any new examination or legal evidence, without legal evidence or even personal knowledge of what occurred on the former examination, or that the charge against the girl was different from that specified in the warrant of commitment.

A bare statement of the facts is all that is necessary to make the error apparent. The defendant sets up an adjudication on the merits by the county judge of Rensselaer county in November last, on return to a writ issued upon the application of the father of the child. Although previous adjudications in preceding by *habeas corpus* are no answer to a new writ, People *ex rel.* Lawrence *v.* Brady, 56 N. Y. 182, yet,

if there had been such adjudication by the learned judge, I would at least hesitate to entertain these proceedings, but it now clearly appears that there was no such adjudication. Indeed, this question was not presented to him.

For the reasons stated, Mary Day must be discharged.

*James H. Ryan*, for appellant.

*J. S. Wheeler*, for respondent.

Order affirmed on opinion below.

LEARNED, P. J., LANDON and FISH, JJ., concur.

---

In the Matter of the Estate of LEWIS DEPUY, Deceased.

*Supreme Court, Third Department, General Term, December 11, 1889.*

1. *Limitations. Surrogate.*—The statute of limitations applies to proceedings in surrogates' courts for the payment of the decedent's debts.
2. *Same. Justice's judgment.*—An action on a transcripted judgment from justice's court is, after six years, barred.

Appeal from order of the surrogate of Ulster county, denying petition for order directing payment of justice's court judgment recovered against the intestate.

*John D. Eckert*, for appellant.

*F. L. Westbrook*, for respondent.

PUTNAM, J.—Alexander J. Forbes, on May 24th, 1889, presented a petition to the surrogate of Ulster county, alleging that he was a creditor of Lewis Depuy, deceased, upon a judgment for $64.20, obtained before a justice of the peace on August 13, 1875, and duly docketed in the clerk's office of Ulster county on August 19, 1875; that deceased made a payment of $10 on the said judgment in 1884; that Sabina E. Depuy was appointed administratrix of deceased on October 10, 1887, said Lewis Depuy having died shortly prior to said period. He asked that said administratrix be